WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Elsa Carolina Mancia,

Petitioner,

v.

Pamela Bondi, et al.,

Respondents.

No. CV-26-01392-PHX-DWL (CDB)

**ORDER**

Petitioner filed a *pro se* habeas petition under 28 U.S.C. § 2241, alleging that she was improperly denied a bond hearing after being arrested by federal immigration officials. (Doc. 1 ¶ 19.)  In a March 5, 2026 order, the Court granted the petition to the extent it sought a bond hearing and ordered Respondents to provide Petitioner with a bond hearing within seven days.  (Doc. 9.)  The Court also entered judgment in Petitioner's favor.  (Doc. 10.)  On March 11, 2026, Respondents filed a "Notice of Compliance" indicating that Petitioner had received a bond redetermination hearing that day.  (Doc. 11.)

On April 14, 2026, Petitioner—now represented by counsel—filed a "motion to enforce habeas order."  (Doc. 16.)  According to Petitioner, the bond hearing she received on March 11, 2026 "was not constitutionally adequate and did not satisfy this Court's Order" because "the Immigration Judge denied Petitioner a meaningful opportunity to present evidence, refused a brief continuance even where the government agreed it was appropriate, and then denied bond based on the absence of evidence.  This was not a meaningful bond hearing.  It was a denial in form only."  (*Id.* at 1.)  In support of this

contention, Petitioner encloses a declaration in which she claims that, during her bond hearing, the immigration judge ("IJ") asked if she had an attorney; she responded that she did not currently have an attorney but was looking for one; opposing counsel from the Department of Homeland Security ("DHS") then indicated "that per the federal court order, we could continue the case for one day for [her] to find an attorney to [present her] case"; and the IJ then "said no," "said [her] case was going forward that day," and proceeded to deny her bond request because she did not present any evidence. (Doc. 16 at 8-9 ¶¶ 7-10. *See also id.* at 11 [order of the IJ, denying bond in part because "Respondent has not submitted any documents"].) Petitioner contends that she has "a lot of evidence" to present and has "since hired an attorney." (*Id.* at 9 ¶¶ 11-12.)[1] Petitioner emphasizes that her "motion does not seek de novo review of a discretionary bond determination" and "is not barred by 8 U.S.C. §§ 1226(e) or 1252(a)(2)(B)(ii)" because "[t]hese provisions do not preclude review of constitutional claims or questions of law, including whether a bond hearing complied with due process." (*Id.* at 2-3.)

In response, Respondents contend that "the Immigration Judge conducted a bond redetermination hearing within the required time period. It is thus an undisputed fact that Respondents have complied in full with the Court's order. There is nothing left for this Court to enforce. Petitioner's legal arguments concerning the sufficiency and outcome of the bond proceedings, which challenge the adequacy of those proceedings, cannot be raised anew within the context of a motion to enforce and fall outside the scope of the Court's order." (Doc. 17 at 1-2.) Respondents also contend that, under 8 U.S.C. § 1226(e), the

---

[1] Petitioner also contends that "[t]he constitutional deficiencies in [her] bond hearing are not an isolated occurrence" and "reflect a broader pattern of non-individualized adjudication." (Doc. 16 at 4.) In an attempt to substantiate this claim, Petitioner encloses two recent orders in which the same IJ denied bond requests in other cases. (*Id.* at 16-17, 21-22.) Petitioner also encloses a news article stating that a federal judge in Colorado recently raised "concern that immigration courts in Colorado are not conducing neutral and fair bond proceedings to determine whether detainees pose a danger of flight risk." (*Id.* at 24.) Although it is unnecessary to resolve these accusations in light of the determination that Petitioner is entitled to relief for other reasons, Petitioner's claims of systematic bias are not consistent with the Court's experience—the Court has ordered many bond hearings in recent months, and the notices of compliance filed in those cases frequently indicate that the petitioner was released on bond following the hearing. Additionally, the mere fact that the same IJ denied bond requests in two other recent cases does not—without any information about the specifics of those cases—show systematic bias.

Court lacks jurisdiction to review an IJ's bond decision and that "[t]he proper mechanism to obtain [such] review . . . is through the Board of Immigration Appeals ('BIA'). . . . Instead, Petitioner asks this Court to circumvent the BIA . . . . Thus, the issues raised in Petitioner's Motion are not properly before this Court, particularly within the context of a motion to enforce." (*Id.* at 2, cleaned up.)

In reply, Petitioner contends that Respondents "do not contest that the Immigration Judge refused to grant a continuance," that DHS "counsel indicated that a brief continuance was appropriate," or that "Petitioner was required to proceed pro se." (Doc. 18 at 1.) Petitioner also contends that "Respondents' jurisdictional argument is misplaced" because she "does not challenge the Immigration Judge's discretionary bond determination. Rather, [she] challenges whether the bond hearing complied with the Constitution and this Court's Order." (*Id.* at 2.)

As a threshold matter, the Court agrees with Petitioner that a "motion to enforce" is a potentially permissible vehicle for seeking further relief in a habeas action when, as here, the court previously issued an order requiring the provision of a bond hearing and the petitioner seeks to raise a challenge to the validity of the resulting hearing. In *Diaz Reyes v. Mayorkas*, 854 F. App'x 190 (9th Cir. 2021), an alien "filed a habeas petition," the district court then "order[ed] the government to provide [the alien] with a bond hearing," the IJ then "denied bond," and the alien then "returned to the district court to seek enforcement of [its earlier] order," arguing that the bond hearing was flawed. *Id.* at 190-91. The district court denied the motion to enforce on the ground that the alien was required "to exhaust her arguments before the BIA prior to seeking enforcement of the order" and the Ninth Circuit affirmed. *Id.* at 191. Although this outcome might appear, at first blush, to support Respondents' position that an appeal to the BIA is the only pathway for a habeas petitioner to seek further relief in this scenario, it is notable that the Ninth Circuit characterized the "prudential exhaustion" doctrine applied by the district court as a "general[]" rather than categorical requirement, emphasized that the district court had "discretion" to "waive the exhaustion requirement" and "was in the best position to decide

whether exhaustion was warranted under the circumstances before it," and noted that "[s]hould [the alien] renew her motion to enforce . . . , the district court will again be in the best position to decide . . . whether further exhaustion is warranted, and ultimately, whether the government complied with its order." *Id.* This language suggests that a "motion to enforce" is not a categorically impermissible vehicle for seeking to challenge the validity of a bond hearing held as the result of an order issued in a habeas action—instead, the district court must decide whether to require exhaustion. *See also N.A. v. Warden, Adelanto Detention Facility*, 2026 WL 1045196, *5 (C.D. Cal. 2026) ("*Diaz Reyes* thus indicates that a district court has the discretion to determine whether to require exhaustion before considering an enforcement motion. However, it is unclear whether *Diaz Reyes* contemplates that the ordinary standard for prudential exhaustion applies—under which exhaustion is presumed and the petitioner has the burden to demonstrate that a waiver applies—or that district courts have greater discretion to determine if exhaustion is required when it comes to a motion to enforce.").[2] Here, the Court declines to require exhaustion in light of "the irreparable harm that would result from wrongful detention, which may result given the lengthy time it takes to have an appeal decided" by the BIA. *C.A.R.V. v. Wofford*, 2026 WL 241823, *5 & n.7 (E.D. Cal. 2026). *See also Perez v. Wolf*, 445 F. Supp. 3d 275, 285-86 (N.D. Cal. 2020) ("Petitioner must show that at least one of the *Laing* factors applies in order to excuse exhaustion. Petitioner has done so here by demonstrating . . . irreparable harm . . . . Petitioner has been detained for over two years. If Petitioner is correct on the merits of this habeas petition, i.e., if he is correct that his second bond hearing again violated due process, then he has been unlawfully deprived of a bond hearing for over two years. Even assuming the Government is correct that Petitioner's BIA appeal will take two months, these two months, coupled with his already two-year detention, still

---

[2]    As noted in *N.A.*, although the non-binding decision in *Diaz Reyes* suggests that prudential exhaustion is required in this circumstance, not all district courts in the Ninth Circuit agree: "[D]istrict courts in the Ninth Circuit have reached differing conclusions on whether prudential exhaustion applies to enforcement motions. Some courts in the Ninth Circuit have determined that administrative exhaustion is not required to enforce a prior order. . . . Other district courts have found that any claim challenging the legality of detention, even if brought via an enforcement motion, is subject to Section 2241's prudential exhaustion requirement." *Id.* at *5-6 (cleaned up).

- 4 -

present irreparable harm as it is possible Petitioner is being held unlawfully.") (cleaned up).

Turning to the merits, if Petitioner were seeking to challenge the IJ's discretionary weighing of the evidence during her bond hearing, she would not be entitled to relief. *See, e.g., Fajardo-Cordova v. McGregor*, 2026 WL 788801 (D. Ariz. 2025) (denying "motion to enforce" that effectively sought to "second-guess the immigration judge's weighing of the evidence") (cleaned up); *Da Costa-Joao v. McGregor*, 2026 WL 1030846, \*2 (D. Ariz. 2026) (denying "motion to enforce" because "[t]he IJ was in the best position to determine whether [the reporting] violations were innocent and/or the product of technological errors, as Petitioner contends, or whether they were indicative of a risk of flight"). But Petitioner's challenge is different—Petitioner contends[3] the bond hearing itself violated her due process rights because the IJ denied her request for a continuance so she could be represented by counsel, even though the DHS attorney did not oppose the continuance request. As the Ninth Circuit has explained, aliens have a "statutory right to counsel," and "[t]o infuse the critical right to counsel with meaning, . . . IJs must provide aliens with reasonable time to locate counsel and permit counsel to prepare for the hearing." *Biwot v. Gonzales*, 403 F.3d 1094, 1096, 1098-99 (9th Cir. 2005). Although "[a]bsent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing," "we cannot allow a myopic insistence upon expeditiousness to render the right to counsel an empty formality." *Id.* at 1099 (cleaned up). "No bright line guides our consideration of what constitutes reasonable time. The inquiry is fact-specific and thus varies from case to case. We pay particular attention to the realistic time necessary to obtain counsel; the time frame of the requests for counsel; the number of continuances; any barriers that frustrated a petitioner's efforts to obtain counsel, such as being incarcerated or an inability to speak English; and whether the petitioner appears to be delaying in bad faith." *Id.* In light of these standards, the denial of Petitioner's request for a continuance to obtain counsel was

---

[3] Although Petitioner's declaration is not sworn under penalty of perjury (Doc. 16 at 9), Respondents do not dispute any aspect of her account of the bond hearing. The Court thus accepts that account as true for purposes of this motion.

impermissible. The bond hearing was scheduled on very short notice, Petitioner had not previously sought a continuance, Petitioner was incarcerated, and there was no conceivable bad-faith basis for her continuance request (which the DHS attorney tellingly did not oppose).[4]  Nor have Respondents made a harmlessness argument, and Petitioner's declaration sufficiently forecloses, at any rate, any claim of harmlessness.

Finally, the Court possesses jurisdiction to grant relief, as "§ 1226(e) restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law." *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024) (cleaned up).  Thus, "although the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (cleaned up).

Accordingly,

**IT IS ORDERED** that:

1.      Petitioner's motion to enforce (Doc. 16) is **granted**.

2.      Respondents must provide Petitioner with a bond redetermination hearing within seven days of this order (which deadline may be extended at Petitioner's request if necessary to obtain the assistance of counsel).

3       Respondents must file a notice of compliance within three days of the bond hearing.  The notice must identify the outcome of the hearing.

Dated this 21st day of April, 2026.

_____
Dominic W. Lanza
United States District Judge

---

[4]      In reaching this conclusion, the Court recognizes that the IJ may have misperceived the March 5, 2026 order as mandating that the bond hearing be completed by March 12, 2026 (and, thus, implicitly barring any continuance request by Petitioner that would extend the hearing beyond that date).  The Court apologizes if the March 5, 2026 order created any uncertainty on this point.