**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elsa Carolina Mancia, | No. CV-26-01392-PHX-DWL (CDB) |
| Petitioner, | |
| v. | **ORDER** |
| Pamela Bondi, et al., | |
| Respondents. | |

Petitioner filed a *pro se* habeas petition under 28 U.S.C. § 2241, alleging that she was improperly denied a bond hearing after being detained by federal immigration officials. (Doc. 1 ¶ 19.) In a March 5, 2026 order, the Court granted the petition to the extent it sought a bond hearing and ordered Respondents to provide Petitioner with a bond hearing within seven days. (Doc. 9.)

On April 14, 2026, Petitioner—now represented by counsel—filed a "motion to enforce habeas order." (Doc. 16.) Petitioner argued that the bond hearing she received on March 11, 2026 "was not constitutionally adequate and did not satisfy this Court's Order" because "the Immigration Judge denied Petitioner a meaningful opportunity to present evidence, refused a brief continuance even where the government agreed it was appropriate, and then denied bond based on the absence of evidence. This was not a meaningful bond hearing. It was a denial in form only." (*Id.* at 1.)

In an April 22, 2026 order, the Court granted the motion to enforce. (Doc. 19.) As an initial matter, the Court concluded that "a 'motion to enforce' is a potentially permissible

vehicle for seeking further relief in a habeas action when, as here, the court previously issued an order requiring the provision of a bond hearing and the petitioner seeks to raise a challenge to the validity of the resulting hearing." (*Id.* at 3.)  Turning to the merits, the Court explained that "if Petitioner were seeking to challenge the IJ's discretionary weighing of the evidence during her bond hearing, she would not be entitled to relief. . . . But Petitioner's challenge is different—Petitioner contends the bond hearing itself violated her due process rights because the IJ denied her request for a continuance so she could be represented by counsel, even though the DHS attorney did not oppose the continuance request." (*Id.* at 5, cleaned up.)  The Court concluded that "the denial of Petitioner's request for a continuance to obtain counsel was impermissible." (*Id.* at 5-6.)  Finally, the Court stated that it had jurisdiction to grant relief, notwithstanding 8 U.S.C. § 1226(e), because that statutory provision "restricts jurisdiction only with respect to the executive's exercise of discretion" and "that discretionary judgment does not include constitutional claims or questions of law." (*Id.* at 6, citation omitted.)

On April 28, 2026, another bond hearing took place. (Doc. 20 at 22-23.)  Petitioner was represented by counsel and filed an array of supporting documents in advance of the hearing. (*Id.* at 25-87.)  The Department of Homeland Security also submitted documents in advance of the hearing. (*Id.* at 89-108.)  At the conclusion of the hearing, the IJ denied Petitioner's request for bond and provided the following explanation for the decision:

> The Court has conducted an individualized bond hearing.
>
> The Court has considered the positive and negative equities, and all evidence of record.  It is uncontested that the respondent unlawfully entered the United States in 1997.  The respondent has 4 United States citizen children.
>
> The respondent had TPS status but let that status lapse.  The respondent waited until she was detained at the Eloy Detention center to file her I-130 petition.  The respondent was employed in the United States without authorization.  USCIS denied the respondent's adjustment of status application. See exhibit 3 at page 16. On February 4, 2021, Respondent was given 33 days to depart the United States, but did not depart.  Respondent has shown repeated disregard for the laws of the United States.

> After considering the totality of the circumstances and all relevant factors, the Court finds that the respondent has not met her burden to establish that she is not a significant flight risk such that release from custody is warranted. Accordingly, the Court denies the respondent's request for a change in custody status.

(*Id.* at 22-23.)

Petitioner has now filed another motion to enforce. (Doc. 20.) Petitioner contends "[t]his case presents a now-familiar pattern: a district court orders a constitutionally adequate bond hearing, and the Immigration Court responds with a conclusory denial that fails to engage with the record, fails to apply the correct legal standard, and relies on generic factors common to broad classes of noncitizens." (*Id.* at 1.) Petitioner adds: "The [IJ] found Petitioner to be a flight risk based on: (1) manner of entry decades ago, (2) lapse of TPS, (3) timing of an I-130 filing, (4) unauthorized employment, (5) denial of adjustment, and (6) alleged failure to depart. None of these factors—individually or collectively— constitutes evidence that Petitioner is likely to abscond. Instead, they are boilerplate characteristics shared by countless individuals in removal proceedings. Under controlling law, reliance on such non-individualized factors is insufficient as a matter of law and cannot justify continued detention." (*Id.* at 2.) Petitioner also faults the IJ for failing to provide any "meaningful analysis," arguing that the IJ's decision "does not explain how any factor was weighed, does not address countervailing evidence, and does not permit meaningful judicial review." (*Id.* at 6.) Next, Petitioner discusses each factor identified by the IJ as supporting a finding of flight risk and argues that none of those factors is, in fact, suggestive of flight. (*Id.* at 6-16.) Last, Petitioner argues that the factors identified in *Matter of R-A-V-P-*, 27 I. & N. Dec. 803 (BIA 2020), for assessing flight risk "overwhelmingly weigh against any finding of flight risk." (*Id.* at 16-19.)

In response, Respondents argue that Petitioner is simply attempting to challenge the IJ's discretionary weighing of the evidence, which means her challenge is barred by § 1226(e). (Doc. 23 at 1-2.) Respondents contend that although "Petitioner argues that the IJ did not conduct an individualized analysis," "this is incorrect. The IJ explicitly named

- 3 -

seven factors in its written decision, none of which Petitioner argues were unsupported by the record: (1) Petitioner unlawfully entered the United States in 1997, (2) Petitioner has four United States citizen children, (3) Petitioner had temporary protected status but allowed it to lapse, (4) Petitioner did not seek adjustment of status until after she was detained, (5) Petitioner worked in the United States without authorization, (6) Petitioner's application for adjustment of status was denied, and (7) Petitioner failed to depart the United States following a notice sent to her in 2021." (*Id.* at 3-4.)  Respondents argue that "Petitioner's challenge to most of these factors is that they can also apply to others, but this does not mean that the IJ's decision to consider them was not individualized" and that although "Petitioner argues that certain factors are improper as a matter of law, . . . she states these legal conclusions without citations to any legal authority."  (*Id.* at 4.)

In reply, Petitioner argues that she "does not ask this Court to reweigh evidence or substitute its judgment for that of the Immigration Judge.  Nor does Petitioner contend that every adverse bond determination gives rise to a constitutional violation reviewable in habeas.  Instead, Petitioner challenges the constitutional adequacy of the proceeding itself and the legal sufficiency of the purported bases for continued detention after this Court twice ordered constitutionally compliant bond proceedings."  (Doc. 25 at 1.)  Petitioner elaborates: "[C]ourts may not second-guess discretionary weighing of evidence, but they retain authority to remedy constitutional violations and legally unsupported detention decisions.  This case falls squarely on the constitutional side of that line."  (*Id.* at 3.)  Petitioner also contends that "Respondents effectively ask this Court to conclude that once an Immigration Judge utters the words 'flight risk' and lists several generic factors, judicial review ends."  (*Id.* at 10.)

The Court concludes that Petitioner is not entitled to further relief.  Petitioner's second bond hearing, unlike her first one, was constitutionally compliant as a matter of process—Petitioner was represented by counsel and had a full and fair opportunity to present evidence and argument.  Additionally, the IJ issued a written decision following the hearing that included a multi-paragraph explanation for the negative flight-risk

determination.  (Doc. 20 at 22-23.)  The IJ acknowledged that Petitioner's request for release on bond was supported by certain "positive . . . equities" but also identified various instances of conduct by Petitioner that, in the IJ's view, qualified as "repeated disregard for the laws of the United States" and supported a finding of flight risk.  (*Id.*)  True, some of those categories of conduct are not unique to Petitioner—many aliens seeking release on bond may have, for example, entered the country unlawfully or obtained employment without authorization—but the IJ still provided an individualized explanation that was specific to Petitioner's case.  *Cf. Ghanem v. Warden Essex Cnty. Correctional Facility*, 2022 WL 574624, *2 (3d Cir. 2022) ("In a fundamentally fair bond hearing, due process has three essential elements. An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her interests.") (cleaned up).

These features of the IJ's decision also distinguish this case from *Benipal v. Rokosky*, 2026 WL 1355010 (D. Ariz. 2026), which Petitioner cites repeatedly in her reply brief.  *Benipal* involved "an IJ's unexplained decision denying bond because it summarily concludes the noncitizen is a flight risk."  *Id.* at *7.  Indeed, the IJ's decision in *Benipal* provided, in its entirety, as follows: "The Court finds that the respondent has failed to meet his burden of proving he is not a flight risk if released on bond, finds that the respondent is properly detained without bond, and declines to set bond in his case."  *Id.* at *3.  That is a far cry from the IJ's decision here, which spanned several paragraphs, referenced specific facts concerning Petitioner, and clarified that the IJ was aware of the "positive . . . equities" and had considered all of the evidence.

At bottom, Petitioner's argument is simply that the IJ was wrong to conclude that she is a flight risk in light of her long period of residence in the United States, her community and family ties, her employment history, her record of compliance with immigration-related requirements, and her lack of criminal history (Doc. 20 at 17-19), as well as due to the presence of what she views as benign explanations for the conduct that

the IJ viewed as evincing "repeated disregard for the laws of the United States" (*id.* at 6-16).  Although Petitioner may very well be correct on those points, the Court fails to see how a "motion to enforce," filed as part of this now-closed habeas corpus proceeding, is the proper vehicle for raising this sort of challenge, particularly where Petitioner acknowledges she is concurrently pursuing review of the very same issue in the Board of Immigration Appeals ("BIA").  (Doc. 25 at 7 n.1 ["Petitioner timely filed a Notice of Appeal (Form EOIR-26) with the [BIA] following the Immigration Judge's denial of relief. . . . [T]he appeal has been timely filed and remains pending before the Board."].)

In *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), the Ninth Circuit addressed a similar issue.  There, Leonardo filed a § 2241 petition challenging his prolonged immigration detention without a bond and the district court granted the petition to the extent it sought a bond hearing.  *Id.* at 1159.  The IJ then denied bond, but "[r]ather than appealing the IJ's adverse bond determination to the BIA, Leonardo filed a motion for review of the IJ's decision in his pending habeas case."  *Id.*  The Ninth Circuit held that "[t]his short cut was improper" and that Leonardo "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision."  *Id.* at 1160.  In a related vein, the Ninth Circuit "reject[ed] Leonardo's contention that the district court should have addressed his challenges to the IJ's decision based on the court's authority to ensure compliance with its earlier habeas order," explaining that although "Leonardo is correct that the district court had authority to review compliance with its earlier order conditionally granting habeas relief," "the government complied exactly with [the district court's order] by affording a bond hearing before an immigration judge" and "[t]he district court was under no obligation to address Leonardo's new arguments under the ambit of ensuring compliance with the earlier order."  *Id.* at 1161.

Here, although the Court concluded that Petitioner's first motion to enforce was a permissible vehicle for seeking further relief as part of this proceeding because the bond hearing held on March 11, 2026 was not constitutionally complaint as a matter of process (and, thus, effectively failed to satisfy the March 5, 2026 order directing the provision of a

bond hearing), Petitioner's second motion to enforce is functionally indistinguishable from the "motion for review" filed in *Leonardo*, which the Ninth Circuit deemed an "improper" "short cut." Under these circumstances, the Court concludes that Petitioner must seek relief via the BIA review process.[1]

Accordingly,

**IT IS ORDERED** Petitioner's renewed motion to enforce (Doc. 20) is **denied**.

Dated this 4th day of June, 2026.

_____
Dominic W. Lanza
United States District Judge

---

[1] As discussed in the order granting Petitioner's first motion to enforce, "a 'motion to enforce' is not a categorically impermissible vehicle for seeking to challenge the validity of a bond hearing held as the result of an order issued in a habeas action—instead, the district court must decide whether to require exhaustion." (Doc. 19 at 4.) Although there may be valid reasons to overlook the exhaustion requirement when a motion to enforce challenges whether a court-ordered bond hearing was invalid due to a violation of the right to counsel, *Leonardo* makes clear that the situation is different when a motion to enforce challenges the sufficiency of an IJ's reasoning for denying bond. Moreover, courts may excuse the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). *See also Leonardo*, 646 F.3d at 1160 (noting that it may be possible for a detainee to "demonstrate[] grounds for excusing the exhaustion requirement"). But here, Petitioner has not argued or explained why any of the *Laing* factors support excusing the exhaustion requirement.